Please call the next case. Form 16-0303, Richard Olmsted v. Workers' Compensation Commission. Counsel, you may proceed. May it please the Court, Mr. Wirtz, my name is Bruce Lasore and I represent Richard Olmsted. Mr. Olmsted last worked in mining almost 10 years ago, 2007. The arbitrator awarded 10% in a reasoned decision. The Commission reversed that 10% award and denied the claim for what I consider to be and what I'm going to argue are incomplete and unclear reasons. I'm asking for you to reverse the Commission denial because it's incomplete and it's wrong as a matter of law. You're asking for a remand? Yes, sir. Well, let me ask you this first. I would rather have it stay here, but I don't think I have a choice. I'm sure you would. Did the Commission ever definitively rule as to whether or not your client had CWP? One of the things I'm going to say is I don't think they rule on anything. I think that what they did was they said, here's a disease that has no disablement, so we're not even going to say whether he's got the disease. We'll just go to the disablement. And my case for that is the David Sims case that was here in 2013. I think the Commission also, when it listed the things it did consider were important in whether this man was disabled, ran right over the Louis Selmo case from 1996 that was in this court also. But I think they just got their feet all wound up in what disablement was. The three diseases they were talking about that were on the table were co-workers' pneumoconiosis, chronic bronchitis, and an obstructive ventilatory defect. The worst chronic bronchitis aren't in the decision. They didn't talk about it. And oddly enough, that's the one that both doctors said the man had. Even the company doctor said he had. So I don't think they ruled on it. They didn't rule on the obstructive. They spent all the time on co-workers' pneumoconiosis. And after two pages of analyzing the evidence, they got, and I'll read it to you here, after two pages of analyzing the evidence, they finally said, given what has been presented to the Commission, the Commission will not base its determination on which expert should be given more weight than another. I don't know how you decide pneumoconiosis. If you don't give somebody more weight, it's a light switch. And then they went further, and this is in that sense, having done that, the Commission now turns the issue to the issue of whether there's a disablement for the occupational definition in the act. So that I think they made their whole determination on whether the guy had disablement and then forget the disease. Another thing I can't figure out, and as you know, I'm hopefully getting more sharp each day after my surgery. Sometimes I look and think, what was I thinking about yesterday when I looked at this case? But I see in here, they said the petitioner complied with Section 1F. Well, how can he have done that if he didn't have proved the disease in a timely fashion? I think this decision just is unclear, and it doesn't make sense. If it's all right with you, can I get back on my script a little bit? Yes. Okay. But inevitably and inexorably, we may have to address that issue. Yes, yes. Stop me any time. But what I'm going to say is the Commission here has taken a funny turn, and it's very hard to figure them out now. There are – Mr. Wertz, being very thorough, has dozens of issues he's brought up in his brief, but 90% of them don't apply anymore once we get to the one we're talking about. And so I'm not going to talk about them this morning. The document that counts is that Commission denial. And here, burdened by common sense, I'll state several facts that can't be disputed. First, the claimant alleges that Dr. Cohen found pneumoconiosis, chronic bronchitis, and a mild obstructive breathing defect. Dr. Rosenberg also found chronic bronchitis. Second, this man worked 31 years as an underground coal miner. Third, the universal testimony, the undisputed testimony, is that coal mine dust can cause every one of these diseases. Fourth, it's stipulated by respondents' witnesses that claimant had sufficient mine exposure to cause each of these diseases. And fifth, claimant is a lifelong never smoker. What else do you blame it on? Now, at one time, that would have been enough. When a positive arbitrary decision came to the Commission, it would go through. It's not now. Now, after looking at that, we add the identity of the witnesses and what data they have. And in this case for claimant, there was Dr. Cohen, pulmonologist, bee reader, researcher, publisher of medical research studies, director of pulmonary division at what used to be Cook County Hospital, Stroger, now. Medical director of all the nation's black lung clinics, and a course instructor for NIOSH in interpreting pulmonary function tests. And one of the three reader reviewers for the AMA Guides to Impairment, both the fifth and sixth edition. And for respondent, you would see Dr. Rosenberg, pulmonologist, bee reader, a doctor who resides in and practices in Cleveland, Ohio, and has never been a part of a black lung clinic. He's a nice guy. I like him, but those are the credentials. And then, third thing, you look at the sufficiency of the data available to each witness. Dr. Cohen had a full black lung exam, chest x-rays, PFTs, patient histories, physical exams. Rosenberg only had a records review. He had Cohen's results and opinions, treater records, and chest x-rays to review. Now, before Dr. Rosenberg was chosen to be the witness for respondent, they knew that one of the diseases on the table is chronic bronchitis. Patient history is it. They chose to have an expert who never saw the man, never talked to the man, never took a patient history. Mr. Ossor, you're providing us rationale for accepting the claimant's expert's testimony here. I want to read something from the commission decision and ask you to explain this as best you can. The commission wrote, the arbitrator found that petitioner sustained CWP that is causally related to his exposure to coal dust. The arbitrator found that the opinions of, and then identified the three claimant's opinions, were more persuasive than the respondent's experts. However, the arbitrator did not provide a basis for accepting the one set of opinions over another. And then I'll skip to the line that I am most intrigued by. The commission stated, given what has been presented to the commission, the commission will not base its determination on which expert should be given more weight than another. What is the commission saying there in regards to evaluating the expert's testimony here? How is the commission to determine the issue of whether or not claimant has CWP if it does not weigh the evidence presented through the experts? That's what I think. I don't know how they did it. It's hard to get in their head and make any sense of this at all. It's a binomial with pneumoconiosis. You've got it or you don't. We've got guys saying you've got it, the respondent has guys saying you don't. In the end, the arbitrator, the commission says, we think those guys are more persuasive. We think they're more credible. So we go with them. And that's really all the further you can go because we can't read the x-rays ourselves. And there's no other data to it. It's just a film. And so the arbitrator, in saying little, said all there was that could be said. And then the commission spent about two pages going through all the evidence and all the x-rays that were read and what each guy found. And in the end said, well, we're not going to pick anything based on it. Well, okay, so we're here on appeal. Our court can't make that decision. Correct. Well, that was one of the questions I've got. And I've been doing this for 30 years. There's still a lot I don't know. My preference would be that you could use the arbitrator's decision rather than go back and spend three years for this man who's already spent ten years coming back for this case. But how do we do it? Don't we review the commission's decision, not the arbitrator's? I'm not saying you can do what I just asked. You're suggesting you're not saying we can or can't. That's correct. I think probably what you've got to do is send it back and say, give us something that makes sense. You know, just from 30,000 feet, my impression is that we're arguing about windmills. Yes, sir. Yes, because they've made no decision. We've got a non-decision in front of us, and so it's kind of hard for me to argue manifest way questions when there's nothing to argue about. The argument is that they did not make a decision. The argument is they paid no attention to the Sims case, to the Selma case, in knowing what his statement really is in these cases. If you wouldn't mind, I'd like to talk to you about that for a minute. Must I? In traditional legal analysis, that becomes a dictum, doesn't it? Or dictum. Could you say that again? I mean, go ahead with what you're saying, but you're going to say they misunderstood the law. Am I correct? I'm going to say they ignored the law. I'm saying they tried to rewrite it. I'm trying to say they disrespected you. I'm trying to say that they don't care what the law was. I'm trying to say that they looked at it and said, huh, we don't think pneumoconiosis gives any problems, so we don't even care if he's got it. He doesn't have disablement. So that's all they ruled on is the disablement side. And so they left you with no decision, and they left me with no decision. Now, the unfortunate thing is, if I get my wish and it goes back, all they've got to do is say, hmm, we do think they're more persuasive. Then I'll be here in three years, and it won't be against the manifest way of the evidence. Nonetheless, the law is something we have to do one step at a time. They left the steps out. That was improper. We have three diseases. They didn't rule on any of them. And why that happened, I don't know. But to me, it's pretty clear it did. And so I guess the only thing I can ask for you is to send it back and ask them to address specifically and their bases for the chronic bronchitis, the obstructive lung disease, and the CWP. Because we get up here, and CWP used to be the fun thing to argue 20 years ago. It's not anymore. There's nothing there. The commission just chooses one or the other, and there's always something in the evidence to support that. There's no manifest way argument. But in this case, both doctors found chronic bronchitis. And this guy's a never smoker. It used to be that you'd say, okay, I got that one, Juan. I don't know why I don't hear it. And another thing is that they didn't mention they said this guy went to an allergist, and he did. What they didn't say is that that allergist found the FEV1 to be 78%, which is low, and he gave him two prescriptions. And then he saw Dr. Paul and had a methicoline challenge, which showed a reactive airways disease. And he diagnosed rhinitis and asthma and gave him two other prescriptions. But they don't talk about that either. And that would be evidence that you'd have to weigh when you're talking about the obstructive disease. So I could be misreading here. I hope I'm not. But I think that you know where I'm coming from. They didn't rule on these. They need to rule on these. And that's all I can ask for is that you reverse and remand and have them rule on them. Thank you. Thank you, counsel. You'll have time to reply. Excuse me. May it please the Court. Mr. Wassore, my name's Ken Wirtz, and I represent the Apple Leaf Freeman Cole. Let's just start at the beginning here, where I think the beginning is here. Under the Occupational Diseases Act, occupational disease is defined in Section 1B of the Act. Disablement is also defined. ODAC's different than the World Compact. We actually define what disablement is. And it's defined in Section 1E of the Act. Justice Harris, the very last sentence of the commission's decision and opinion on review on page 13 before the It is therefore ordered paragraph reads in part, petitioner was not disabled as defined in Section 1E of the Act. And did not sustain an occupational disease resulting in disablement as defined in Section 1D of the Act. So the commission here did something. Actually, I'm happy they did, because the Act is established. The law is a statutory preacher. We're wedded to the statute here in these claims. They actually cited to the Act in regard to their denial of the claim. And what did they say? No occupational disease and no disablement. I think they very directly and with reference to the statute stated in this case that their conclusion was. So did they or did they not rule on whether or not the claimant had disabled? I think they did by that. When they say that he has failed to prove. You're saying by inference, obviously. Yeah. They didn't say that. Well, let me answer your question this way. Because it is a curious statement. I'll admit that. It is the claimant's burden to prove this case by a preponderance of the evidence. Sure enough. One interpretation for what they're saying here is that the evidence here is balanced. And we're not picking one or the other. But that means necessarily, of course, that there was a failure to prove by a preponderance of the evidence. Why do we have to define things by implication? Can't they rule on the issues that are presented? Well, that's why I pointed out to you their language where they specifically said. So you're giving me the Mexican standoff. Right? I don't know if we're giving you the Mexican standoff. Well, I mean, that's what we used to call it. That involves three, right? I'm always trying to. It's two. I always get confused by the Mexican standoff. Yeah. So they didn't push it beyond which was their burden. I think they specifically addressed it with the sentence I read. I truly do. It seems, from your standpoint, they would have been better off not saying anything about the experts. Because what they did say is we're not going to evaluate. Right. I agree with that. I agree with you 100%. They did then conclude, though, in the very last sentence, no disease and no disabled. Yeah. And specifically citing to the statute in doing so. So we would hope that they know what Section 1B and 1E says. Certainly pneumoconiosis, cold workers' pneumoconiosis, is not patient. So when they say that he has failed to prove that, Justice Hudson. And you're also hoping we adopt your argument. Well, sure. As long as you're hoping for several things. Absolutely. I don't need to tell you that this is a manifest way question. I would also point out if this decision is supported by the evidence regardless of the rationale, whatever, and even if it was crazy rationale, then it should be affirmed. I can go into the evidence, but now we're just arguing the facts again. We read it. Yeah. Before the commission. And I don't see a lot to be gained by that. I just want to, in response to something Mr. Wisore said in regard to his being seen by an allergist and the commission not addressing that, it actually isn't a fact. Now I have to remember if it was actually in their opinion. But in the facts of the case, this gentleman was seen by an allergist and he was determined to have an allergy to dust mites and was diagnosed with allergic rhinitis and he was actually given shots because of dust mites. That's not an occupational disease. Even though the word dust is there, we're talking about. I don't think there are dust mites in a coal mine. I think they're in your home, in a building, in the carpet here. So, I mean, that is in the facts. I'm tempted to talk about the facts, but I don't know. I don't know what process there would be in that. Steve, do you have any other questions? No. I don't believe the court does. Thank you. Well done. Thank you, Mr. Wisore. Thank you. So in this Mexican standoff, I don't know, Travis drew that line in the sand. The question is why. If you're foolish enough to walk across it, how do you find it? Thank you very much. Very good. Thank you, Counselor Bull, for your arguments in this matter. It will be taken under advisement and a written disposition shall issue it.